# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAFAEL MARTI, | : | CIVIL NO. 3:14-CV-0137 |
| Petitioner | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| JOHN KERESTES, | : | |
| Respondents: | | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Petitioner Rafael Marti ("Marti"), a Pennsylvania state inmate presently incarcerated at the State Correctional Institution at Frackville, initiated this action on January 27, 2014, with the filing of a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). He challenges the Judgment of Sentence entered on September 29, 2009, in Court of Common Pleas of York County Criminal case numbers CP-67-CR-0000736-2008 and CP-67-CR-0002818-2008. For the reasons that follow, the petition will be denied.

**I.    Background**

In 2007, Marti and his girlfriend were arrested after large amounts of cocaine and marijuana were discovered at Marti's residence. (Doc. 41-1, p. 175). "On December 17, 2008, [Marti] completed a written plea colloquy and discussed it with his counsel. N.T. Guilty Plea, 12/17/08, at 4. On the same day, [Marti's] girlfriend pleaded guilty to misdemeanors – not felonies – and was sentenced to twelve months probation." (Id. at 283).

On December 26, 2008, Marti filed a motion to withdraw his guilty plea. (Id.) The following exchange transpired at the January 20, 2009 hearing:

[Appellant's counsel]: Your Honor, at the time of the plea, Your Honor, immediately following my client was very dissatisfied with the fact that he had pled. He did not want to, but he felt that he was in essence forced into it. He didn't have enough time to consider all of his options.

Prior to the plea, and I was speaking with the [assistant district attorney, I] advised [Appellant] that I did not think it was wise for him to plead, but he decided at that point [to] do so. Immediately proceeding [sic], Your Honor, he was indicating to me that he didn't do some of the offenses listed, and that he wished to have a trial. I indicated to him that our only other option at that point was to file a motion to withdraw our plea and leave it up to the discretion of the Court. That's why we are here today, Your Honor, and we are asking that he be allowed a jury trial.

The Court: There was no plea agreement?

[Appellant's counsel]: There was no plea agreement, however, he did receive some consideration, Your Honor, in two points, and in the motion issue No. 9 the last sentence, [Appellant] does state that part of the reason he pled was so the Commonwealth would be lenient on the co-defendant girlfriend/wife. That did happen. She did receive or plea to misdemeanor as opposed to felonies and received probation. Second part of the leniency is, Your Honor, in regard to 736 of '08, he plead [sic] guilty to Count I, delivery of cocaine. In exchange for that, the Commonwealth did agree not to file the mandatory on that charge, and the Commonwealth has not done so.

\*   \*   \*

The Court: Okay. Sir, obviously if you are innocent, you didn't do this, you go to trial. That's the end of the discussion. However, if you did, you should be aware that the plea agreement that was reached semi sort of a plea agreement you would lose the benefit of it.

[Appellant]: I understand.

The Court: And at this point if you go to trial and as a result of the Judge [sic] hearing, and it won't be me, by the way, this will be going back I guess to Judge Snyder.

\*   \*   \*

The Court: [Judge Snyder] would decide what the appropriate sentence

2

was, but it's been my experience that somebody that enters a guilty plea gets a benefit out of accepting responsibility plus the Judge doesn't hear all the details, the dirty details. When he has a trial, he sits there and listens to everything in detail, while plea it is just a summary presentation, and it's [sic] been my experience that you end up getting more time under those circumstances occasionally, not always, but sometimes. In addition, you also lose the benefit of the plea agreement for girlfriend.

[Commonwealth]: Girlfriend or wife.

The Court: In any event, the Commonwealth would be permitted to have her sentence and plea vacated, and she would again face the original charges she faced, and she would potentially go to jail for the maximum sentence on whatever her charges were.

[Appellant's Counsel]: Your Honor, it is my understanding that she had already been sentenced.

The Court: Doesn't matter. If agreement was that she got sentenced on the basis of his plea and he withdraws his plea, then she is back to where she was. If you want to–

[Appellant's counsel]: Let me —

The Court: You can't have the benefit of that and withdraw your plea.

[Appellant's counsel]: Your Honor, after conferring with [Appellant], even though he is reluctant, he understands that he doesn't want his significant other to be tried again or for her sentence to be vacated. So at this point, Your Honor, we will be withdrawing our motion.

The Court: Okay. And do you want to finalize the case today and have the sentence by the agreement that the Commonwealth offered, or do you want to continue to have the possibility that go higher or lower?

(Doc. 41-1 at 284-86, citing N.T. Mot. To Withdraw Plea, 1/20/09, at 1-5). In response, counsel indicated that he needed to further confer with his client. (Id. at 286). The motion to withdraw the plea was deemed withdrawn and the hearing was concluded. (Id.)

3

> Procedurally, the matter proceeded as follows:
>
> On February 9, 2009, Appellant was sentenced to seven-and-a-half to fifteen years in prison. He subsequently filed a PCRA petition, had his direct appeal rights reinstated, and obtained a six-month reduction of his sentence to seven to fifteen years in prison. Appellant timely appealed, and the *Marti I* Court affirmed on November 17, 2010.
>
> On March 30, 2011, Appellant timely filed his first *pro se* PCRA petition and supporting memorandum of law. Appellant claimed his plea counsel was ineffective for failing to object to the trial court's participation in plea negotiations and for advising him that he would receive a three to six year sentence. On May 16, 2011, the court appointed PCRA counsel, who did not file an amended PCRA petition.
>
> A hearing was held on June 21, 2011, at which Appellant and plea counsel testified. Appellant testified that plea counsel advised that if he lost at trial, his potential prison sentence would be two to four years. N.T. PCRA Hr'g, 6/21/11, at 14. He also testified that plea counsel informed him that an open guilty plea would result in a three to six year prison sentence. Id.
>
> Plea counsel disagreed with Appellant's testimony. Id. at 22. Plea counsel testified that he informed Appellant that because of his high prior record score and the Commonwealth's pursuit of multiple mandatory minimum sentences, he should reject an open guilty plea. Id. Plea counsel testified that but for the Commonwealth dropping the charges against Appellant's girlfriend, he would have advised proceeding to trial. Id. The PCRA court explicitly found plea counsel's testimony credible and Appellant's testimony not credible. Id. at 34. The PCRA court denied Appellant's petition.
>
> Appellant timely appealed and timely filed a court-ordered Pa.R.A.P. 1925(a) statement. PCRA counsel also filed with this Court a petition to withdraw on September 6, 2011. In response to counsel's petition, on October 11, 2011, Appellant filed a *pro se* motion to treat his *pro se* memorandum of law in support of his *pro se* PCRA petition as his appellate brief.

(Doc. 14-1, pp. 286-87). PCRA counsel was permitted to withdraw and the Superior Court considered the merits of the following issues raised by Marti:

Plea counsel was ineffective for not objecting to the court's active participation

4

> in the plea (withdrawal) [sic] process, which persuaded [Appellant] to leave his guilty plea in place even though he didn't want to.
>
> Plea counsel was ineffective for inducing [Appellant's] guilty plea with a "promise" that his sentence would be 3 to 6 years; when in fact, the sentence proved to be 7 to 15 years.

(Id. at 289, n. 6). Relief was denied on the first issue. (Id. at 294). The second issue was remanded to have counsel file an advocate's brief or a renewed petition to withdraw regarding the second issue. (Id. at 327).

Appellant filed an advocate's brief wherein he contended that "the plea court gave Appellant erroneous information: the Commonwealth could vacate the girlfriend's plea to misdemeanor offenses. He argues that the erroneous information caused him to withdraw his motion to withdraw his guilty plea in order to not affect his girlfriend's plea bargain. Appellant insists that the Commonwealth cannot establish substantial prejudice or any other basis to deny his request to withdraw his guilty plea." (Id. at 327-28). Conversely, the Commonwealth argued that it would incur substantial prejudice if Appellant withdrew his guilty plea because it complied with the plea agreement. (Id.) Ultimately, the Superior Court concluded that because "substantial prejudice would inure to the Commonwealth" Marti failed to establish that counsel provided ineffective assistance and denied relief. (Id. at 331-32).

## II.     **Standards of Review**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts reviewing a state prisoner's application for a writ of habeas corpus may not grant relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," Greene v. Fisher, ––– U.S. ––––, ––––, 132 S.Ct. 38, 43 (2011) (internal quotations and citations omitted), "[t]his is a difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, ___ U.S. ____, ____, 131 S. Ct. 1388, 1398 (2011) (internal quotation marks and citation omitted).  The burden is on Marti to prove entitlement to the writ.  Id.

A decision is "contrary to" federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  A decision is an "unreasonable application" of federal law if the state court identified the correct governing legal rule but applied the rule to the

facts of the case in an objectively unreasonable manner. Renico v. Lett, 559 U.S. 766, 773 (2010). A decision is based on an "unreasonable determination of the facts" if the state court's factual findings are objectively unreasonable in light of the evidence presented to the state court. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

## III.   Discussion

Marti raises two ineffective assistance of counsel claims: (1) "Plea counsel was ineffective for not objecting to the court's active participation in the plea (withdrawal) process which persuaded petitioner to leave his guilty plea in place even though he didn't want to." (Doc. 1, p. 5) and, (2) "Plea counsel was ineffective for inducing petitioner's guilty plea with a 'promise' that his sentence would be 3 to 6 years; when in fact, the sentence proved to be 7 to 15 years." (Id. at p. 6).

The test for ineffective assistance of counsel is a well settled and firmly established one containing two components. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984). "Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.

In analyzing Marti's ineffective assistance of counsel claims, the state court utilized the following three pronged state law test of ineffectiveness:

7

> [C]ounsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her conduct; and (3) Appellant was prejudiced by counsel's action or omission. To demonstrate prejudice, an appellant must prove that a reasonable probability of acquittal existed but for the action or omission of trial counsel. A claim of ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs. Further, a PCRA petitioner must exhibit a concerted effort to develop his ineffectiveness claim and may not rely on boilerplate allegations of ineffectiveness.

(Id. at 290, 328-29, quoting Commonwealth v. Perry, 959 A.2d 932, 936 (Pa. Super. 2008)). The United States Court of Appeals for the Third Circuit has ruled that this standard is not "contrary to" Strickland. Werts v. Vaughn, 228 F. 3d 178, 203 (3d Cir. 2000). Therefore, "the appropriate inquiry is whether the Pennsylvania courts' application of Strickland to [petitioner's] ineffectiveness claim was objectively unreasonable, *i.e.*, the state court decision evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under Strickland." (Id. at 204).

In his first claim for habeas relief, Marti claims that counsel was ineffective in failing to object to the court's "active participation in the plea (withdrawal) process." (Doc. 1, p. 5). The background of the plea agreement was explored at the plea withdrawal hearing as follows:

> [Appellant's counsel]: Your Honor, at the time of the plea, Your Honor, immediately following my client was very dissatisfied with the fact that he had pled. He did not want to, but he felt that he was in essence forced into it. He didn't have enough time to consider all of his options.
>
> Prior to the plea, and I was speaking with the [assistant district attorney, I] advised [Appellant] that I did not think it was wise for him to plead, but he decided to at that point to do so. Immediately proceeding [sic], Your Honor, he was indicating to me that he didn't do some of the offenses listed and that he wished to have a

8

> trial. I indicated to him that our only other option at that point was to file a motion to withdraw our plea, and leave it up to the discretion of the Court. That's why we are here today, Your Honor, and we are asking that he be allowed to have a jury trial.
>
> The Court:   There was no plea agreement?
>
> [Appellant's Counsel]:   There was no plea agreement, however, he did receive some consideration, Your Honor, in two points, and in the motion issue No. 9 the last sentence, [Appellant] does state that part of the reason he pled was so the Commonwealth would be lenient on the co-defendant girlfriend/wife. That did happen. She did receive or plea to misdemeanor as opposed to felonies and received probation. Second, part of the leniency is, Your Honor, in regard to 736 of '08, he pled guilty to Count I, delivery of cocaine. In exchange for that, the Commonwealth did agree not to file the mandatory on that charge, and the Commonwealth has not done so.

(Doc. 14-1, pp. 323-24). Marti specifically takes exception to counsel's failure to object during the following exchange:

> The Court:   Okay. Sir, obviously if you are innocent, you didn't do this, you go to trial. That's the end of the discussion. However, if you did, you should be aware that the plea agreement that was reached semi sort of a plea agreement you would lose the benefit of it.
>
> The Defendant:   I understand.
>
> The Court:   And at this point if you go to trial and as a result of the Judge hearing, and it won't be me, by the way, this will be going back I guess to Judge Snyder.
>
> Attorney Neiderhiser:   Judge Snyder now.
>
> The Court:   That Judge would decide what the appropriate sentence was, but it's been my experience that somebody that enters a guilty plea gets a benefit out of accepting responsibility plus the Judge doesn't hear all the details, the dirty details. When he has a trial, he sits there and listens to everything in detail, while plea it is just a summary presentation, and it's been my experience that you end up getting more time under those circumstances occasionally, not always, but sometimes. In addition, you also lose the benefit of the plea agreement for

>     girlfriend.
>
>     Attorney Neiderhiser:     Girlfriend or wife.
>
>     The Court:   In any event, the Commonwealth would be permitted to have her sentence and plea vacated, and she would again face the original charges she faced, and she would potentially go to jail for the maximum sentence on whatever her charges were.

(Id. at 19-20; Doc. 14-1, pp. 18-19).  Marti claims that he wanted to go to trial but he "felt intimidated and scared" that "his girlfriend would get more time 'for not keeping the plea.' " (Doc. 1, p. 20).

The Superior Court considered the issue in the context of Pennsylvania Rule of Criminal Procedure 591, which provides that "[a]t any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, or direct, *sua sponte*, the withdrawal of a plea of guilty or *nolo contendere* and the substitution of a plea of not guilty.  PA. R. CRIM. P. 591(a)."  (Doc. 14-1, p. 329).  "There is no absolute right to withdraw a guilty plea.  Nevertheless, prior to the imposition of sentence, a defendant should be permitted to withdraw his plea for any fair and just reason, provided there is no substantial prejudice to the Commonwealth.  We will not disturb the decision of the sentencing court absent an abuse of discretion.  An abuse of discretion is not merely an error judgment.  Discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence of record."  (Id. at 329-30 citing Commonwealth v. Broaden, 980 A.2d 124, 128 (Pa. Super. 2009).  The court noted that although there is no particular test for identifying

10

substantial prejudice, "[a] 'mutuality of advantage' to defendants and prosecutors flows from the ratification of the bargain. When a defendant withdraws or successfully challenges his plea, the bargain is abrogated and he must be prepared to accept all of the consequences which the plea originally sought to avoid." (Id. at 330). This led the Superior Court to the following conclusion:

> After careful consideration, we conclude substantial prejudice would inure to the Commonwealth. In this case, the Commonwealth and Appellant entered an informal agreement, with both Appellant and his girlfriend receiving the benefit of that agreement. See Ward, 425 A.2d at 406. We view Appellant's request to withdraw his guilty plea in conjunction with the recognition that the Commonwealth honored the plea agreement by charging Appellant's girlfriend with lesser offenses. Cf. id. Although it is not clear from the record when Appellant's girlfriend was sentenced, neither party disputes that she received the benefit of the plea agreement reached between Appellant and the Commonwealth. Cf. id. Given these unique factual circumstances, we decline to reverse the PCRA court's order dismissing his first petition, permit Appellant to withdraw his guilty plea, and reap, without apparent consequences, the benefit of the Commonwealth's compliance with the agreement. Cf. id. Because Appellant has not established the Commonwealth would not suffer substantial prejudice, we fail to discern any arguable merit to Appellant's claim and thus conclude he has not established his plea counsel provided ineffective assistance of counsel. See Perry, 959 A.2d at 936. We hold the PCRA court did not err by denying Appellant's first PCRA petition, and therefore, affirm the order below. See Abu-Jamal, 941 A.2d at 1267.

(Id. at 331-32). There is ample support in the record to conclude that the Superior Court's disposition was a reasonable application of Strickland. Consequently, Marti is not entitled to relief on this claim.

In his second ground for relief, Marti argues that counsel induced his guilty plea with a promise of a lower sentence. In support of this ground, Marti states that, initially, counsel presented him with an open plea agreement whereby the 5-year mandatory sentence on his

11

cocaine charge would be waived and his girlfriend would be allowed to plead to a misdemeanor and receive probation. (Doc. 1, p. 17). Counsel allegedly informed him that the open plea agreement could result in a five to ten year sentence "but we would win on appeal and [he'd] be resentenced to 3-6 years." (Id. at 18). He indicates that counsel advised against the plea agreement because, if he were to proceed to trial, "the most the girlfriend and he would 'get is a [sic] 2-4 years.' " (Id. at 18). Armed with this information, Marti states that he agreed to plead guilty because "he didn't mind doing the extra year for his girlfriend." (Id.)

The guilty plea hearing record is replete with Marti's unequivocal admissions of guilt on the offenses of possession of cocaine and marijuana with intent to deliver, conspiracy, and possession of a stolen weapon. (Id. at pp. 2-4). Also, in response to the trial court's inquiry that "[y]ou had a chance to fill out this guilty plea colloquy and discuss with your attorney and, therefore, you understand your trial rights at this time. And you're pleading guilty and giving up those rights?" Marti stated "Yes, sir." (Id. at p. 4).

Immediately after the guilty plea hearing, Marti expressed to counsel that he felt "rushed into pleading." (Doc. 1, p. 18). Counsel moved to withdraw the plea. (Id. at 18). At the plea withdrawal hearing, Marti was given the opportunity to revisit the consequences of his plea. The applicable mandatory sentences were specifically explored in the following exchange:

> The Court: What I was trying to do is figure out what the range of sentence would be if he left his plea in without the mandatory and then say now if you withdraw it and the mandatory is back on, where are you at so he makes a

12

>    knowing decision about withdrawing or not.
>
>    Attorney Neiderhiser:    I understand what mandatories exist. The Commonwealth filed the following mandatories: They filed on 736 a two-year weight mandatory on Count 3, a two-year weight mandatory on Count 5 and two, two-year school zones. On 2818, the mandatory filed was five year guns and drugs mandatory.
>
>    The Court:   So assuming that the mandatories aren't run consecutive and assuming that I find the five-year gun mandatory does apply, then absolute minimum he can get as a result of this plea is five years?
>
>    Attorney Neiderhiser:    Correct.
>
>    The Court:   And if they run them all consecutive, he could get 13 plus an additional 5. That would be 18 years mandatory.
>
>    Attorney Neiderhiser:    If you include the cocaine back in, yes.
>
>    The Court:    Okay. Sir, obviously if you are innocent, you didn't do this, you go to trial. That's the end of the discussion. However, if you did, you should be aware that the plea agreement that was reached semi sort of a plea agreement you would lose the benefit of it.
>
>    The Defendant:    I understand.

(Doc. 14-1, pp. 17-18). There was also a discussion of the ramifications that the plea withdrawal would have on the girlfriend's plea and sentence. (Id. at 19). Based on this discussion, Marti chose to withdraw his motion to withdraw his plea because he did not want his significant other negatively impacted. (Id. at 19). The matter then proceeded to sentencing. (Id. at 48-70). On February 9, 2009, he was sentenced to seven-and-a-half to fifteen years in prison. (Id. at 326).

In considering the issue, the Superior Court observed as follows:

As the Pennsylvania Supreme Court emphasized, "A fair assessment of attorney

> performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstance of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective" under the law in existence at the time of counsel's act or omission. Commonwealth v. Daniels, 963 A.2d 409, 429 (Pa. 2009) (quoting Strickland v. Washington, 466 U.S. 668, 689 (1984)). "[A] defendant is not entitled to relief simply because the strategy is unsuccessful." Commonwealth v. Tippens, 598 A.2d 553, 556 (Pa. Super. 1991) (*en banc*): accord Commonwealth v. Buksa, 655 A.2d 5576, 582 (Pa. Super. 1995). "[I]neffectiveness occurs only where the alternative not selected offered a potential for success substantially greater than the tactics used." Commonwealth v. Clemmons, 479 A.2d 955, 957 (Pa. 1984) (citation omitted). In Commonwealth v. Diaz, 913 A.2d 871 (Pa. Super. 2006), this Court explained that
> 
> > [c]laims of counsel's ineffectiveness in connection with a guilty plea will provide a basis for relief only **if** the ineffectiveness caused an involuntary or unknowing plea. This is similar to the "manifest injustice" standard applicable to all post-sentence attempts to withdraw a guilty plea. The law does not require that appellant be pleased with the outcome of his decision to enter a plea of guilty: "All that is required is that [appellant's] decision to plead guilty be knowingly, voluntarily, and intelligently made."
> 
> Id. at 873 (citation omitted) [emphasis in original]
> 
> Instantly, the PCRA court weighed the testimony of Appellant and his plea counsel. The PCRA court explicitly credited counsel's testimony that he advised Appellant to reject the plea agreement because he would receive a higher sentence with an open plea of guilty than if he went to trial. See N.T. PCRA Hr'g, 6/21/11 at 22, 34. The court explicitly rejected as not credible Appellant's testimony that an open guilty plea would result in a three to six year prison sentence. See id. at 34. Because there is support in the record, we defer to the PCRA court's determination that trial counsel was more credible than Appellant. See Abu-Jamal, 720 A.2d at 93. Accordingly, and given the written plea colloquy, we hold that Appellant failed to establish that his decision to plead guilty was unknowing, involuntary, and unintelligently made, and thus hold that plea counsel did not induce Appellant to accept a guilty plea. See Diaz, 913 A.2d at 873.

(Doc. 14-1, pp. 292-93). The Superior Court's disposition was a reasonable application of Strickland that has support in the record. Marti fails to carry his burden with respect to this ground.

**IV.     Conclusion**

For the reasons set forth above, the petition for writ of habeas corpus will be denied. An appropriate order follows.

                                      **BY THE COURT:**

                                      **s/James M. Munley**
                                      **JUDGE JAMES M. MUNLEY**
                                      **United States District Court**

Dated:        April 10, 2015